IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE BUSH, | No. 4:21-CV-01555 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BASS ENERGY SERVICES; SWN PRODUCTION COMPANY, LLC; JEREMY BROOKS; and JOHN DOE(S) 1-5, | |
| Defendants. | |

# MEMORANDUM OPINION

### OCTOBER 6, 2023

Litigation is often characterized as a "search for truth." In civil litigation, the discovery process is at the heart of this quest. Though American Courts rely on an adversarial system, discovery requires cooperation and candor between opposing parties. Otherwise, the process loses its validity and there is no reason for the system to continue.[1]

Plaintiff Kyle Bush and his counsel have fallen well short of these obligations; therefore, the Court will grant Defendant SWN Production Company, LLC's Motion to Compel.

---

[1] Robert Johnston and Sara Lufrano, *The Adversary System as a Means of Truth Seeking and Justice*, 35 J. MARSHALL L. REV. 147, 154 (2002).

## I. BACKGROUND

This litigation arises out of an alleged workplace injury. Bush alleges that, while working for Defendants SWN and Bass Energy Services, he was "struck in the head by a three-pound metal wrench that fell 27 feet after being negligently dropped by Defendant Jeremy Brooks."[2] As a result, Bush says he suffered "a loss of consciousness, SLAP tear, concussion and neurological issues, pain in his neck and shoulders, and difficulty sleeping."[3]

On July 21, 2023 SWN filed a Motion to Compel Certain Discoverable Materials and Appearance for an Independent Medical Examination.[4] Apart from the Independent Medical Examination ("IME"), SWN sought Bush's tax records, medical records, and documents evidencing work or employment subsequent to the alleged incident.[5] SWN also sought responses to interrogatories asking Bush to identify his former employers and medical providers as well as tax and income information.[6] Bush filed his opposition on August 4,[7] and SWN filed a reply on August 15.[8] Concurrent with SWN's Reply Brief, Bass Energy and Brooks ("Joinder Defendants") filed a "Joinder Motion to Compel Discoverable Documents and

---

[2] Compl., Doc. 1-2 ¶ 2.
[3] *Id.* ¶ 4.
[4] Mtn. to Compel, Doc. 30.
[5] *Id.* ¶ 5.
[6] *Id.* ¶ 6.
[7] Mtn. to Compel Opp. ("MTC Opp."), Doc. 32.
[8] Mtn. to Compel Reply ("MTC Reply"), Doc. 36.

Appearance for an Independent Medical Examination."[9] In the docket entry, Joinder Defendants describe their motion as a "Motion for Joinder."[10] The Court granted the "Motion for Joinder" on August 21.[11]

On September 20, 2023, Bass Energy, Brooks, and SWN (collectively, "Defendants") filed a Joint Motion to Dismiss "based on Plaintiff's failure to prosecute or otherwise comply with the Court's August 21, 2023 Order."[12] The next day, SWN filed a letter with the Court, "request[ing] the Court's guidance regarding the import of the August 21, 2023 Order."[13] Bush opposed the Motion to Dismiss on September 25,[14] and Defendants filed their reply the following day,[15] which they describe in the docket entry as a "Sur reply to Reply to Response" to the Motion to Dismiss."[16]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such discovery must take into account "the importance of the issues at stake in the action, the amount in

---

[9]   Joinder Mot., Doc. 35.
[10]  Dkt. No. 35.
[11]  Aug. 21 Order, Doc. 37.
[12]  Mtn. to Dismiss, Doc. 39.
[13]  SWN Letter, Doc. 42. SWN also states that Bush has provided a subset of the requested discovery.
[14]  Mtn. to Dismiss Opp. Br. ("MTD Opp."), Doc. 43.
[15]  Mtn to Dismiss Reply ("MTD Reply"), Doc. 44.
[16]  Dkt. No. 44.

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit."[17] "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."[18] A party served with interrogatories must, within thirty days, answer each interrogatory "separately and fully in writing under oath," unless a proper and specific objection is stated.[19]

Federal Rule of Civil Procedure 37(a)(3)(B) states that "[a] party seeking discovery may move for an order compelling an answer, production, or inspection." The party filing a motion to compel bears the initial burden of "demonstrat[ing] the relevance of the information sought to a particular claim or defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper."[20] The movant also "must first prove that it sought discovery from its opponent."[21]

---

[17] Fed. R. Civ. P. 26(b)(1).
[18] Fed. R. Evid. 401.
[19] Fed. R. Civ. P. 33(b)(3)-(4).
[20] *Osagie v. Borough of State College*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022) (quoting *Miller v. McGinley*, 2022 WL 212709, at *2 (M.D. Pa. Jan. 24, 2022)).
[21] *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995) (citing Fed. R. Civ. P. 37(a)(1)).

## III.   ANALYSIS

### A.   Motions for Joinder and Dismissal

Permission to join the motion of a co-party is typically granted when the arguments proffered by the party initiating the motion apply equally to the joining party and granting the motion to join will not prejudice the plaintiff.[22] Permitting parties to join the pleadings of others serves the interests of judicial economy, reducing the need for parties who seek the same relief from filing separate pleadings, requiring separate briefing from the parties, and separate dispositions from the court.[23] However, parties cannot "adopt by reference the arguments advanced by another party in a motion which the first party seeks to join."[24] Instead, the party joining a co-party's motion is granted the benefit of any rulings on the co-party's motion which may apply with equal force to the joining party.[25]

The Court's Order of August 21, 2023, simply granted Joinder Defendants permission to join SWN's Motion to Compel.[26] It did not, as Defendants suggest,

---

[22] *Rossano v. Maxon*, --- F. Supp. 3d ----, 2023 WL 2351878, at *4 (E.D. Pa. 2023) (citing *Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 363 (W.D.N.Y. 2006); *Gulf Coast Dev. Grp., LLC v. Lebor*, 2003 WL 22871914, at *1 n.1 (S.D.N.Y. Dec. 4, 2003); *Sacay v. Research Foundation of City Univ. of New York*, 44 F. Supp. 2d 505, 509 (E.D.N.Y. 1999)); *accord United States v. Bacon*, 2021 WL 5051364, at *16 (D. Del. Nov. 1, 2021); *Crowley v. Chait*, 2004 WL 543953, at *3-4 (D.N.J. Aug. 25, 2004).

[23] *See People v. Roberts*, 70 V.I. 168, 173 (V.I. Super. 2019) (discussing Virgin Islands Rules of Criminal Procedure regarding notices of joinder). The Court notes that, though not expressly provided for by the Federal Rules of Civil Procedure, parties will frequently join the pleadings of co-parties by notice.

[24] *Krause*, 425 F. Supp. 2d at 363 (citing Fed. R. Civ. P. 10(c)).

[25] *Gulf Coast*, 2003 WL 22871914, at *1 n.1.

[26] *See* Aug. 21 Order, Doc. 37 (granting "the Motion for Joinder").

have "the same force and effect" as granting SWN's Motion to Compel.[27] But, given the nature of Joinder Defendants' filings, perhaps some confusion was inevitable. To be sure, the Court, *ahem*, joins the parties in that confusion. For instance, the Court is confused why Defendants were incurious as to: (1) why "the Court did not independently rule on SWN's Motion;"[28] (2) why in its August 21 Order—identical to Joinder Defendants' proposed order in every other way—the Court specifically clarified that it was granting the "Motion for Joinder," rather than "Co-Defendant's Motion" as originally stated in the proposed order;[29] or (3) why an order granting a motion to compel was not accompanied by an opinion explaining the Court's reasoning.[30] Most significantly, the Court does not understand why, given the obvious confusion among the parties, *none* of the parties thought to simply reach out to the Court weeks ago, rather than filing and briefing a Motion to Dismiss.[31] So much for judicial economy.

To the extent that the parties believe this is a bit unfair, the Court is unsympathetic. It is incumbent upon the parties before any tribunal, whether a

---

[27] *Cf.* Mot. to Dismiss Br. ("MTD Br."), Doc. 40 at 3 n.2.
[28] *Cf.* MTD Br. 3 n.2.
[29] *Compare* Aug. 21 Order *with* Proposed Order, Doc. 35 at 1.
[30] *See North Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 481 (5th Cir. 2018) (observing that a district court's denial of a motion to compel "unaccompanied by reasons—either oral or written—may constitute an abuse of discretion") (citation removed).
[31] The Court notes that SWN's Letter, which could have easily been joined by each party (or at least co-defendants) is precisely the sort of thing that could have been filed weeks ago, and not required the expenditure of time and resources of a motion to dismiss. To the extent that SWN's instinct was to file such a letter, it was the correct one.

United States District Court or a Star Chamber, to do their level best to ensure the tribunal has the information necessary to make informed decisions and provide clear guidance to the parties. Though the Court strives to keep up its end of the bargain, it will occasionally err. It is up to the parties in such circumstances to seek clarity where it may be lacking. Litigants fail to do so at their own peril as it is, ultimately, the Court's opinions, not the parties', which matter. It is the Court's opinions that determine the rights and obligations of those before it, and it is the parties who bear the consequences. Defendants' Motion to Dismiss will be denied.[32]

### B.  Motion to Compel

Bush avers, and SWN agrees, that Bush has agreed to sign and produce the requested authorizations.[33] Defendants state that the following requested discovery remain outstanding: (1) Complete and full answers to SWN's January 24, 2023 Interrogatories; (2) IRS Tax Returns and W-2s from 2012 to Present; (3) Employment records from the date of Bush's accident; (4) an IME; and (5) reimbursement of $4,000 for cancellation fees related to Bush's failure to appear for previously scheduled examinations.[34]

---

[32] This denial is without prejudice to Defendants' right to move for dismissal or other sanctions if Bush's discovery responses remain deficient at the close of discovery.

[33] *See* SWN Letter at 1-2. As of the filing of SWN's letter, it appears Bush has signed and produced two of the sought Authorizations but not yet signed and produced others despite agreeing to do so. To the extent that there are outstanding Authorizations, Plaintiff shall sign and produce them no later than October 13, 2023.

[34] MTD Reply, Doc. 45 at 2.

### 1. Interrogatories and Document Requests

As an initial matter, Bush's opposition is not a filing by a party who has endeavored to fulfill his discovery obligations in good faith. In its Motion to Compel, SWN includes a 62-paragraph statement of facts detailing the instant discovery dispute. In response to *twenty-four* of the paragraphs, Bush avers that the referenced document "speaks for itself, therefore any and all characterizations of its contents are denied."[35] In doing so, Bush denies statements such as:

- "Plaintiff, Kyle Bush, initiated this matter by Complaint, alleging significant and permanent personal injuries as a result of a work site construction accident that occurred on or about August 25, 2019."[36]

- "On or about January 13, 2022, Defendant served upon Plaintiff Request for Production of Documents and Interrogatories."[37]

- A block quote of the entirety of Federal Rule of Civil Procedure 26(b)(1).[38]

- "On July 5, 2022, Defendant sent a third email to Plaintiff requesting availability for the IME."[39]

---

[35] *See generally* MTC Opp.
[36] MTC ¶ 1.
[37] *Id.* ¶ 4.
[38] *Id.* ¶ 23.
[39] *Id.* ¶ 39.

- Quoted sections of various Federal Rules of Civil Procedure with no additional commentary.[40]

Statements that documents were sent on certain dates are not characterizations of the document's contents, nor are quotes provided without additional commentary. Unless Bush truly means to deny that he has suffered "significant and permanent personal injuries," counsel would do well to avoid use of this "unacceptable device, used by lawyers who would prefer not to admit something that is alleged about a document . . . or may perhaps be too lazy to craft an appropriate response."[41]

On the other hand, even where Bush does offer a more expansive response, it is no less deficient. Every 1L Civil Procedure student learns that "simply objecting to requests as 'overly broad burdensome, oppressive, and irrelevant,' without showing 'specifically how each request is not relevant or how each question is overly broad, burdensome, or oppressive,' is inadequate to 'voice a successful objection.'"[42] Nevertheless, Bush insists that he need not respond to SWN's Interrogatories because they are "vague, ambiguous and overly broad seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence."[43] Bush's offhand reference to his deposition testimony and

---

[40] *Id.* ¶¶ 26, 28, 29, 59.
[41] *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. Feb. 26, 2001).
[42] *Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. 2018) (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 483-84 (N.D. Tex. 2014); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484-86 (5th Cir. 1990)).
[43] *E.g.*, MTC Opp. ¶ 6.

9

co-Defendant's "nearly identical" interrogatories[44] may be sufficiently specific in Civil Procedure at American Samoa Law School, but it is well below the standard required in Federal Court. Particularly distressing is Bush's apparent failure to respond to respond to many of the requests altogether, even with a boilerplate objection, until SWN filed their motion.[45]

Bush does not explain why his appearance at a deposition obviates his obligation to respond to interrogatories or produce documents. I have held the Federal Rules of Civil Procedure up to my ear, but they also have not spoken for themselves to offer their own explanation. Nor does Bush provide specific references to deposition testimony that is responsive to SWN's interrogatories or document requests.[46] In the ordinary course of litigation, parties will sit for depositions, produce documents, and respond to interrogatories. The Court finds no reason to excuse Bush from doing the same.

Bush also does not attach co-Defendant's interrogatories or explain how they are nearly identical. Even if the Court were to assume that they are, each *party* is

---

[44] *Id.*
[45] *See* MTC ¶¶ 7, 22. Bush purports to deny this, but on the grounds that he has responded to other discovery requests. *See* MTC Opp. ¶ 7. Discovery is not a choose-your-own-adventure novel where parties can pick and choose which requests to respond to. The Court also notes that, while not the subject of SWN's motion, Bush has apparently similarly ignored requests to depose his healthcare providers. MTD Br. 2 n.1.
[46] *C.f. TY Carts v. Wings Over Happy Valley MDF, LLC*, 2021 WL 5876697, at *3 (M.D. Pa. Dec. 1, 2021) (allowing parties to provide specific references to deposition testimony in response to interrogatories); *Eli Lilly and Co. v. Actavis Elizabeth LLC*, 2010 WL 1849913, at *8 (D.N.J. May 7, 2010) (observing that a "supposed disclosure in a deposition must be clear and unambiguous" to equate with a proper, formal disclosure).

entitled to serve twenty-five written interrogatories and the responding party is required to respond to each interrogatory "separately and fully in writing under oath."[47] Bush must respond to each interrogatory from each party accordingly. If the interrogatories are truly so similar or covered by deposition testimony, this should be no burden at all. Accordingly, the Court will order that Bush provide answers, *not objections*, which comply with the requirements of the Federal Rules of Civil Procedure to the outstanding interrogatories no later than October 13, 2023. Bush must also produce the requested documents no later than October 20, 2023. To the extent that a response to an interrogatory necessitates the production of documents, those documents may be produced by the October 20 deadline.[48] The objection ship sailed when Bush failed to timely respond to SWN's requests.[49] However, the Court does find that the document request in SWN's Interrogatory Set II is overbroad and will narrow the scope accordingly. Bush is required to produce documents sufficient to describe the nature of, and income derived from any employment he has sought or secured since August 25, 2019. Specifically, Bush is not required to produce cell phone records, photographs, videos, or geolocation data in response to this request,

---

[47] Fed. R. Civ. P. 33(a)(1), (b)(3).
[48] As SWN notes, at least some of the requested records can be easily retrieved from the IRS website. Bush's failure to take even this step suggests that he has not made "good faith efforts to provide all requested information." *Cf.* MTC Opp. ¶ 7.
[49] *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 704 (D.N.J. 2015) (collecting cases and observing that it is well settled that boilerplate objections are "inappropriate and results in waiver of the objection").

unless such documents are required to adequately respond to the request. The Court's narrowing of this request is without prejudice to SWN's right to seek production of excluded documents at a later date if appropriate.

### 2. Independent Medical Examination

Bush does not contest that an IME is appropriate in this case. Bush's counsel asserts that he "instructed [Bush] about the importance of attending the examinations and that he makes every effort possible to appear for each."[50] Nonetheless, Bush has been slow to confirm, and subsequently cancel appointments for an IME.[51] When parties fail to fulfill their obligations in such a manner, it is usually not because "life does not . . . go as planned," but a failure to adequately plan in the first instance.[52] The Court will therefore assist Bush in doing so, and direct him to attend an IME no later than the close of discovery on November 6, 2023.[53]

---

[50] July 19, 2022 Letter from D. Sternberg to R. Balch, MTC Ex. N, Doc. 30-18.
[51] *See* Jul. 12, 2022 Email from T. Huegel to D. Sternberg, MTC Ex. M, Doc. 30-17 (following up on three unanswered requests to confirm August 22 appointment); Aug. 17 Email from D. Sternberg to R. Balch, MTC Ex. O, Doc. 30-19 (cancelling August 22 appointment); Sept. 12, 2022 Email from T. Huegel to D. Sternberg, MTC Ex. Q, Doc. 30-21 (following up on three unanswered requests to confirm October 10 appointment); Jun. 5, 2023 Email From D. Sternberg to T. Huegel, MTC Ex. U, Doc. 30-25 (forwarding email from June 2 cancelling June 5 appointment).
[52] *Cf.* July 19 Letter.
[53] The Court will consider an extension to this deadline if required to accommodate the schedule of Dr. Badgio, or for other good cause as can be shown by documentary evidence. The Court is not inclined to extend the discovery deadline otherwise. In setting the deadlines herein, the Court aims to provide sufficient time for the discovery to be produced by Bush, reviewed by Defendants, and for any follow up requests to be made and responded to accordingly.

Bush's argument that it is "overburdensome and unreasonable" to require him to travel over five hours for the IME is not well taken.[54] On the contrary, it would be overburdensome and unreasonable to require SWN to incur additional expenses to find and retain a new provider one month prior to the close of discovery. Bush filed this lawsuit in the Court of Common Pleas for Bradford County, Pennsylvania, within this Court's jurisdiction, and substantially farther from Queens, New York than Dr. Badgio's office. Perhaps the calculus would be different had Bush raised this objection at some other point in the fourteen months that have elapsed since SWN first attempted to schedule the IME, but he did not. Bush has made the journey to Dr. Badgio's office once; he will do it again.[55]

The Court will not require Bush to pay the $4,000 in cancellation fees for the prior missed appointments. Bush's July 19, 2022 Letter putting SWN on notice that Bush would not pay for any cancellation fees, combined with Bush's general approach to his discovery obligations, appear to be obvious red flags that there would be a cancellation and a subsequent dispute over the attendant fee.[56] Bush will, however, be required to pay any cancellation fees subsequent to the Court's Order.

---

[54] MTC Opp. ¶¶ 55-58.
[55] Bush claims that, after his counsel confirmed an appointment for October 10, 2022 via voicemail, he made the trip to Dr. Badgio's office, only to be turned away because the appointment had not been scheduled. MTC ¶¶ 47-50; MTC Opp. ¶¶ 47-50. SWN claims that the appointment was not scheduled because Bush never confirmed he could attend. MTC ¶¶ 47-48. Neither party has produced any record of a voicemail or indicated when the voicemail was left.
[56] July 19 Letter.

## IV. SHOW CAUSE ORDER

Though the Court will not require Bush to reimburse SWN for the cancellation fees, it will order David E. Sternberg, Esquire to Show Cause why he should not be required to do so. Prior to scheduling the August 22, 2022 appointment with Dr. Badgio, SWN sent four separate emails over the course of twenty days to Mr. Sternberg before receiving a response.[57] Mr. Sternberg then sent an email on August 17, 2022 to cancel the August 22 appointment.[58] Following up to reschedule the appointment for October 10, 2022, SWN against sent four emails over the course of 25 days[59] to which Mr. Sternberg alleges he responded with a voicemail.[60] Bush traveled over five hours on October 10 to attend an IME that could not happen because the appointment was never confirmed with Dr. Badgio.[61] Mr. Sternberg has not provided a record of the voicemail, or otherwise indicated who he called and when.[62] Attempting to reschedule the IME for a third time, SWN reached out to Mr.

---

[57] MTC Exs. K, L, M, N, Docs. 30-15, 30-16, 30-17, 30-18.
[58] MTC Ex. O, Doc. 30-19.
[59] MTC Ex. Q, Doc. 30-21.
[60] MTC Opp. ¶ 47.
[61] *Id.* ¶ 47-48.
[62] Though not the subject of a cancellation fee, the circumstances of this missed appointment suggest to the Court that Bush has missed appointments and otherwise failed to meet discovery obligations due to a lack of communication by Mr. Sternberg. When Mr. Sternberg responded to the first request to schedule an appointment, he did so on letterhead. Every other related communication was via email. SWN never sent a Notice to Attend for October 10, 2022. MTC ¶ 48. To the extent Mr. Sternberg directed his client—a man that "has been rendered disabled and is a single father that juggles numerous responsibilities caring for his three-year-old daughter"—to travel over five hours based on an unreturned voicemail, that is, at best, exceedingly poor client service. MTC Opp. ¶ 55.

14

Sternberg three times over the course of thirteen days before Mr. Sternberg's secretary confirmed on April 4, 2023 that Bush could attend the IME on June 6, 2023.[63] SWN followed up with Mr. Sternberg on June 2, 2023 to confirm that Bush would be able to attend the IME. Mr. Sternberg's secretary responded at 2:22 P.M. on June 2, confirming that Bush could attend.[64] However, Mr. Sternberg had emailed his paralegal on June 2 at 10:49 A.M, over three-and-a-half hours before his secretary confirmed the appointment with SWN, that Bush would not be able to attend.[65] He subsequently forwarded the email to SWN on June 5, stating that he "thought [he] sent this out but it may have only went to my paralegal."[66]

In deciding not to require Bush to reimburse SWN for the cancellation fees, the Court considered that Bush is not a sophisticated litigant and, therefore may not have anticipated failing to appear for the IMEs would result in thousands of dollars in cancellation fees. Mr. Sternberg, an experienced personal injury attorney, is not entitled to the same benefit of the doubt.[67]

---

[63] MTC Ex. R, Doc. 30-22.
[64] MTC Ex. T, Doc. 30-24.
[65] MTC Ex. U, Doc. 30-25.
[66] *Id.*
[67] *See* David E. Sternberg Biography, Wapner Newman (accessed Sept. 29, 2023), https://www.wapnernewman.com/our-team/david-sternberg/ (describing Mr. Sternberg as a lawyer with forty years of experience "protecting the rights of injured persons and helping them obtain the largest financial recovery possible); *cf.* July 19 Letter (Sternberg stating that he would not be held responsible for cancellation fees and, therefore, revealing he was aware that cancellation fees are customary).

Regarding the second missed appointment, perhaps the Court could excuse Mr. Sternberg's cancellation of the appointment if his office had not in fact confirmed it after he already knew his client could not attend. Even if this due to a good faith mistake and miscommunication, the Court is not inclined to require SWN to foot the bill for Mr. Sternberg's error. As to the first appointment, the Court is not moved by Mr. Sternberg's letter in which he attempts to absolve himself of any responsibility for missed appointments. The Court is skeptical that Mr. Sternberg has adequately impressed upon his client the importance of his discovery obligations, including attending the IME. If so, the Court is inclined to require Mr. Sternberg to reimburse SWN for an expense that may not have been incurred if he were more diligent.

Therefore, Mr. Sternberg shall Show Cause why he should not be required to reimburse SWN $4,000 for the cancelled appointments. To ensure that it will not interfere with the completion of discovery, Mr. Sternberg's shall file his brief responsive to this Order no later than November 20, 2023. The filing shall comply with the Local Rules regarding submissions of briefs. SWN may file an opposition brief and Mr. Sternberg may file a Reply in accordance with the Local Rules. If he wishes, Mr. Sternberg may remit to SWN the full cancellation fees due in lieu of responding to the Court's Order and advise the Court accordingly.

## V. CONCLUSION

It is alarming that Bush requires a court order to compel him to produce discovery and attend an IME that he does not dispute is appropriate and necessary. There will often be legitimate disputes over the proper bounds of discovery. This is not such a dispute and should not require the Court's intervention. Either Bush's counsel has, despite his best efforts, been unable to impress upon his client the importance of fulfilling his discovery obligations, or counsel has neglected his obligations to make such efforts. If it is the former, perhaps hearing from the Court directly will be sufficient to convince Bush where Mr. Sternberg could not. If it is the latter, then the Court is not confident that Mr. Sternberg can be relied upon, even with the Court's order, to live up to his obligations. Therefore, the Court will require Mr. Sternberg to promptly provide a copy of the Court's Memorandum Opinion and Order to his client with the hope that, in either circumstance, Bush will now appreciate his duties to fulfill the outstanding discovery obligations. Failure to adequately respond to the outstanding discovery requests as ordered may result in sanctions, including the dismissal of Bush's claims.[68]

For the foregoing reasons, Defendants' Motion to Dismiss is denied, SWN's Motion to Compel is granted, and Plaintiff's counsel Mr. Sternberg shall show cause why the Court should not order reimbursement of $4,000 to SWN.

---

[68] Fed. R. Civ. P. 37(b)(2).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
